**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-10323
_____


GRACE FORT, Individually and As Next Friend for
ELIZABETH FORT, A Minor,

                              Plaintiff-Appellant,

versus

DALLAS INDEPENDENT SCHOOL DISTRICT, ELIZABETH
CUMMINGS and KAREN RAMOS,

                              Defendant-Appellee.

_____

Appeal from the United States District Court
For the Northern District of Texas
(3:94-CV01885)
_____

March 11, 1996

Before JOLLY, DAVIS, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

      Grace Fort, individually and as next friend for her daughter
Elizabeth Fort, appeals the district court's order dismissing her
claims under 42 U.S.C. § 1983, and Title IX, 20 U.S.C. §§ 1681-
1688, for failure to state a claim upon which relief may be
granted.  We affirm.

---

      [*]  Pursuant to Local Rule 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in Local Rule 47.5.4.

Elizabeth Fort, a severely mentally retarded child, was a special education student at the D. H. Gaston School in Dallas, Texas. While Elizabeth was attending special education class, a teacher's aide, who was a student at the school, notified Elizabeth's teacher that Elizabeth needed to go to the restroom. Elizabeth's teacher took her to the restroom and left her there alone. When Elizabeth's teacher returned twenty to thirty minutes later, she discovered that Elizabeth had been raped. The student aide who had been assisting in Elizabeth's classroom later confessed to committing the sexual assault.

Fort filed suit individually and on behalf of her daughter Elizabeth for injuries resulting from the sexual assault. Fort sued the Principal, Karen Ramos, and the Special Education Coordinator of the D.H. Gaston School, Elizabeth Cummings, individually and in their official capacities as supervisors, employees, and officials of the Dallas Independent School District under 42 U.S.C. § 1983. Fort also sued the Dallas Independent School District (hereinafter "school district") under 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688. The defendants filed a FED. R. CIV. P. 12(b)(6) motion to dismiss the complaint for failure to state a claim upon which relief could be granted. The district court granted the defendants' motion, and Fort filed a timely notice of appeal.

II

Fort argues that the district court erred by granting defendants' Rule 12(b)(6) motion to dismiss. We can affirm a dismissal for failure to state a claim only if there are no set of facts upon which the plaintiff could state a claim for relief. *Johnson v. Dallas Indep. Sch. Dist.,* 38 F.3d 198, 199 (5th Cir. 1994), *cert. denied,* ___ U.S. ___, 115 S. Ct. 1361, 131 L. Ed. 2d 218 (1995).

A

To state a claim under § 1983, a plaintiff must allege (1) that she was deprived of a constitutionally protected interest, and (2) that the deprivation occurred under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988). A plaintiff who alleges that she was deprived of a liberty or property interest protected by the Fourteenth Amendment, must allege state action to satisfy the first step under § 1983. *Doe v. Rains County Indep. Sch. Dist.,* 66 F.3d 1402, 1406 (5th Cir. 1995). The state action requirement of the Fourteenth Amendment and the color of state law requirement of § 1983 are identical. *Lugar v. Edmondson Oil Co. Inc.,* 457 U.S. 922, 930, 102 S. Ct. 2744, 2750, 73 L. Ed. 2d 482 (1982). Therefore, in a § 1983 suit in which the plaintiff alleges that she was deprived of a constitutional right protected by the Fourteenth Amendment, the plaintiff must "(1) assert a protected 'liberty or property' interest and (2) show that they were deprived of that interest under color of state law." *Rains,* 66 F.3d at 1406. Only after the

-3-

plaintiff has established these two prerequisites do we decide which state actors, beyond the immediate perpetrator, are responsible for the constitutional violation. *Id.* at 1407.

In determining whether a deprivation occurs under color of state law, we look for a 'real nexus' between the activity out of which the violation occurred and the employee's duties and obligations as an employee. *Rains,* 66 F.3d at 1407; *see Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 452 n.4 (5th Cir.) (stating that color of state law requirement was satisfied where coach used his state power and status as student's coach and teacher to manipulate and sexually abuse her), *cert. denied*, *Lankford v. Doe,* ___ U.S. ___, 115 S. Ct. 70, 130 L. Ed. 2d 25 (1994). Recently, we held that a sheriff's rape of a suspect occurred under color of state law because his "actions were an abuse of power held uniquely because of a state position, and the explicit invocation of governmental authority constituted a 'real nexus' between the duties of Sheriff and the rape." *Bennett v. Pippin,* 1996 WL 26785, *9 (Jan. 24, 1996) (citation omitted).[1]

To establish the first element of her § 1983 claim, Fort alleges that Elizabeth was deprived of her Fourteenth Amendment right to bodily integrity. *See Taylor,* 15 F.3d at 445

---

[1]    The sheriff in *Bennett* had gone to the plaintiff's residence ostensibly to investigate a shooting in which she was a suspect. Before going to the residence, he had used his authority as sheriff to ensure that the plaintiff's husband would not be returning home that evening. The sheriff questioned the plaintiff about the shooting for thirty to forty-five minutes before the rape occurred. When the plaintiff refused the sheriff's request for sex, he replied, "I can do what I want, I'm the Sheriff." *Id.*

("schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right"). Fort alleges that Elizabeth was deprived of this liberty interest under color of state law because the rapist was performing the function of an employee of the school at the time of the rape. Fort alleges that the defendants inadequately investigate and supervise the student aides, constituting deliberate indifference towards Elizabeth's substantive due process rights.

Fort's § 1983 claim fails because the pleadings do not establish that Elizabeth's Fourteenth Amendment rights were violated under color of state law. Unlike the sheriff in *Bennett*, the student aide did not use the authority of his position when he raped Elizabeth. The student aide's only duties were to assist inside the classroom. When the student aide notified the teacher that Elizabeth needed to use the restroom, the teacher took her there, not the student aide. The student aide's presence in the bathroom with Elizabeth was not authorized by the defendants. He went there on his own volition with his own agenda, not to fulfill his duties as a student aide. There is no nexus between the student's duties as an aide and his rape of Elizabeth; therefore, Fort has failed to allege a constitutional violation or to satisfy the color of state law requirement of § 1983.

Fort alleges, in the alternative, that even if the student

aide was not acting under color of state law, the defendants are liable under § 1983 under the state-created danger theory. This theory imposes § 1983 liability when state actors "created the plaintiffs' peril, increased their risk of harm, or acted to render them more vulnerable to danger." *Johnson,* 38 F.3d at 200. Although the Fifth Circuit has never predicated relief on this theory, we have noted that in order to state a claim under the state-created danger theory the plaintiff must prove (1) that the environment created by the state actors was dangerous; (2) that the actors knew it was dangerous; and (3) that the actors used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur. *Id.* at 201.

Without deciding whether the state-created danger theory is constitutionally sound, we hold that the pleadings in this case do not meet the requirements for stating a claim under this theory. Fort alleges that the defendants created a dangerous environment at the school by failing to adequately investigate and supervise the student aides. However, Fort does not allege that the defendants knew that the school environment was dangerous. At most, Fort alleges that the defendants were negligent in not adequately investigating and supervising their student aides, creating a dangerous environment. This allegation is insufficient to state a claim for relief under the state-created danger theory. *Id.*

Because the pleadings in this case fail to establish that Elizabeth was deprived of a constitutional right under color of

state law or that there was a state-created danger, the district court did not err by granting the defendants' motion to dismiss Fort's § 1983 claims.

                                    B

Fort further contends that the district court erred in dismissing her Title IX claim against the school district. Title IX prohibits discrimination of the basis of sex in "any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).[2] Title IX discrimination includes situations where "a teacher sexually harasses and abuses a student." *Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, ___, 112 S. Ct. 1028, 1037, 117 L. Ed. 2d 208 (1992). Only institutions, not individuals, can be sued under Title IX. *Cannon v. University of Chicago,* 441 U.S. 677, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st Cir. 1988). Therefore, to establish a claim under Title IX, the plaintiff must establish that an educational institution receiving federal assistance intentionally discriminated on the basis of the plaintiff's sex.[3] *Chance v. Rice Univ.,* 984 F.2d 151, 153 (5th

_____

[2] Section 1681(a) states that "No person in the United States, shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

[3] We note that the circuits are split as to whether proof of disparate impact, instead of discriminatory intent, is sufficient to prove discrimination under Title IX. *Compare Mabry v. State Bd. of Community Colleges and Occupational Educ.,* 813 F.2d 311, 316 n.6 (10th Cir.) (stating that proof of disparate impact should be sufficient to establish discrimination under Title IX), *cert. denied*, 484 U.S. 849, 108 S. Ct. 148, 98 L. Ed. 2d 104 (1987) *with Chance v. Rice Univ.,* 984 F.2d 151, 153 (5th Cir. 1993) (holding that Title VI's intentional discrimination standard was the appropriate vehicle for analyzing a

                                   -7-

Cir. 1993); *Cannon v. University of Chicago,* 648 F.2d 1104, 1109 (7th Cir.), *cert. denied*, 454 U.S. 1128, 102 S. Ct. 981, 71 L. Ed. 2d 117 (1981).

We are not aware of any precedent establishing that an educational institution can be liable under Title IX for a single act of student-to-student sexual assault. Although district courts have held that inaction by a school district in the face of numerous complaints about student-to-student sexual harassment is actionable under Title IX, *Oona R.-S. by Kate S. v. Santa Rosa City Sch.,* 890 F. Supp. 1452, 1469 (N.D. Cal. 1995); *Doe v. Petaluma City Sch. Dist.,* 830 F. Supp. 1560, 1576 (N.D. Cal. 1993), we are not aware of any cases that have found Title IX liability when

---

Title IX claim); *Pfeiffer v. School Bd. for Marion Ctr. Area,* 917 F.2d 779, 788 (3d Cir. 1990) (stating that proof of discriminatory intent instead of discriminatory effect is probably what is required under Title IX); *Cannon v. University of Chicago*, 648 F.2d 1104, 1109 (7th Cir.) (holding that proof of disparate impact is not enough to establish discrimination under Title IX), *cert. denied*, 454 U.S. 1128, 102 S. Ct. 981, 71 L. Ed. 2d 117 (1981).

The dispute over Title IX's intent requirement centers on whether Title VI or Title VII is the more appropriate analogy for Title IX. Title IX was patterned on Title VI of the Civil Rights Act of 1964 when it was enacted, *Cannon v. University of Chicago,* 441 U.S. 677, 694-96, 99 S. Ct. 1946, 1956-57, 60 L. Ed. 2d 560 (1979). However, many courts have also looked to Title VII case law in interpreting Title IX. *See Mabry,* 813 F.2d at 316 (applying Title VII standards to Title IX claim). *But see Chance,* 984 F.2d at 153 (holding that Title VI standards, not Title VII, should be applied to Title IX claims). While a plaintiff must prove intentional discrimination to recover monetary damages under Title VI, *Guardians Ass'n v. Civil Serv. Com'n of N.Y. City,* 463 U.S. 582, 103 S. Ct. 3221, 77 L. Ed. 2d 866 (1983), proof of disparate impact will establish discrimination under Title VII. *Dothard v. Rawlinson,* 433 U.S. 321, 97 S. Ct. 2720, 53 L. Ed. 2d 786 (1977). Therefore, courts have required or not required proof of discriminatory intent in Title IX cases, based on whether they believe Title VI or Title VII is the more appropriate vehicle for analyzing Title IX claims.

The Supreme Court's most recent Title IX decision did not resolve the debate over the intent requirement. In holding that monetary damages are available under Title IX for intentional discrimination, the Court relied on a Title VII case, *see Franklin,* ___ U.S. at ___, 112 S. Ct. at 1037 (citing *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)), even though the Court had previously stated that the drafters of Title IX explicitly intended for Title IX to be interpreted as Title VI had been. *Cannon,* 441 U.S. at 696, 99 S. Ct. at 1957.

there has been a single unprecedented act of violence against a student.

The problem with establishing institutional liability in the context of this case, is the requirement of proving intentional discrimination by the school district. A school district's inaction toward a student's complaints of sexual discrimination or the district's failure to adequately remedy the problem may demonstrate intentional discrimination by the school district. *Petaluma,* 830 F. Supp. at 1576; *Oona,* 890 F. Supp. at 1469; *see also R.L.R. v. Prague Pub. Sch. Dist. I-103,* 838 F. Supp. 1526, 1534 (W.D. Okl. 1993) (dismissing Title IX claim for failure to establish discriminatory intent through "facts showing the custom or policy, acquiescence in, conscious disregard of, or failure to investigate or discipline on the part of the School District or any named defendant"). However, when the underlying sexual discrimination consists of a single violent crime, there will rarely, if ever, be a basis for arguing that the school district engaged in intentional sexual discrimination, because there is often no warning that such crime will take place. Fort does not allege that there had ever been any complaints about this student aide or any of the student aides to which the school district failed to adequately respond. Fort argues that the school district's custom of inadequately investigating and supervising the teachers' aides created a dangerous environment in which this type of assault could happen; however, such an allegation does not

establish intentional sexual discrimination by the school district.

Because Fort fails to establish that the school district engaged in intentional sexual discrimination, the district court did not err in granting the defendants' motion to dismiss Fort's Title IX claims.

IV

For the foregoing reasons, we AFFIRM the district court's order dismissing Fort's 42 U.S.C. § 1983 and Title IX claims.